**No. 25-10800**

# United States Court of Appeals

*for the*

# Eleventh Circuit

———————◆———————

SMOOTHIE KING FRANCHISES, INC.,

*Plaintiff-Counter Defendant-Appellee,*

– v. –

BEST SMOOTHIE INC., JEAN VICTOME and MONJOVIC, LLC,

*Defendants-Counter Claimants-Appellants.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA, CASE NO. 1:21-cv-04402-WMR
(HONORABLE WILLIAM M. RAY, II, U.S. DISTRICT JUDGE)

**BRIEF FOR DEFENDANTS-APPELLANTS**

JONATHAN D. GOINS
ALICE WARD
LEWIS BRISBOIS BISGAARD & SMITH, LLP
600 Peachtree Street NE, Suite 4700
Atlanta, Georgia 30308
(404) 348-8585

FRANCOIS ECCLESIASTE
LEWIS BRISBOIS BISGAARD &
SMITH, LLP
90 S. 7th Street, Suite 2800
Minneapolis, MN 55402
(612) 428-5000

*Attorneys for Defendants-Appellants*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Appellants hereby certify that the following listed persons and entities as described in the Eleventh Circuit Rule 26.1-2(a) have an interest in the outcome of this appeal:

- The Honorable William M. Ray, II, United States District Judge for the Northern District of Georgia

- Best Smoothie, Inc. – Appellant/Defendant

- Christopher Prine Bussert – Counsel for Plaintiff/Appellee

- Adam H. Charnes – Counsel for Plaintiff/Appellee

- Ava Conger – Counsel for Plaintiff/Appellee

- Jennifer Cotton – Counsel for Plaintiff/Appellee

- François O. Ecclesiaste – Counsel for Defendants/Appellants

- Jonathan D. Goins – Counsel for Defendants/Appellants

- John P. Jett – Counsel for Plaintiff/Appellee

- Austin King – Counsel for Defendants/Appellants

- Kilpatrick Townsend & Stockton LLP – Counsel for Plaintiff/Appellee

- Lewis Brisbois Bisgaard & Smith LLP – Counsel for Defendants/Appellants

- Monjovic LLC – Appellant/Defendant

- Brittany Nash – Counsel for Plaintiff/Appellee

- Wale Oyenuga – Former Franchisee of Appellee Smoothie King Franchises, Inc.

C-1

- Joe P. Reynolds – Counsel for Plaintiff/Appellee

- Smoothie King Franchises, Inc. – Plaintiff/Appellee

- Jean Victome – Appellant/Defendant

- Alice Ward – Counsel for Defendants/Appellants

No publicly traded company or corporation has an interest in the outcome of this case or appeal.

C-2

## STATEMENT REGARDING ORAL ARGUMENT

Defendants-Appellants Best Smoothie Inc., Monjovic LLC, and Jean Victome ("Appellants") respectfully request oral argument pursuant to Federal Rule of Appellate Procedure 34(a)(1) and Rule 28-1(c) of the Eleventh Circuit Rules.

This appeal involves whether a non-party should be retroactively penalized – *without* having been given any "actual notice" of a Consent Judgment from a prior case involving Plaintiff-Appellee Smoothie King Franchises, Inc. ("Appellee" or "Smoothie King") and one of its former franchisees (the Oyenugas); and whether unfair competition claims can be proven through an "ab initio" third party. Because this case involves erroneous conclusions of law from the underlying court (which if these rulings remain in effect will create new law contrary to Eleventh Circuit jurisprudence) – oral arguments are helpful.

i

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ...................................................................................C-1

STATEMENT REGARDING ORAL ARGUMENT................................................. i

TABLE OF CONTENTS ..................................................................................... ii

TABLE OF CITATIONS..................................................................................... iii

STATEMENT OF JURISDICTION...................................................................... 1

STATEMENT OF THE ISSUES........................................................................... 1

STATEMENT OF THE CASE............................................................................... 2

STANDARD OF REVIEW ................................................................................. 18

SUMMARY OF THE ARGUMENT ................................................................... 18

ARGUMENT AND CITATIONS OF AUTHORITY ........................................... 20

I.    THE DISTRICT COURT ERRED IN GRANTING A LAST-MINUTE BENCH TRIAL, VIOLATING APPELLANTS' SEVENTH AMENDMENT RIGHT TO A JURY TRIAL. ........................................................................ 20

II.   THE DISTRICT COURT ERRED IN FAILING TO FIND THAT APPELLEE'S CLAIMS WERE BARRED BY *RES JUDICATA* AND THE SETTLEMENT AGREEMENT'S RELEASE. ...................................... 24

III.  THE DISTRICT COURT ERRED BY CONCLUDING APPELLANTS HAD ACTUAL NOTICE OF THE INJUNCTION AND WAS IN PRIVITY WITH THE OYENUGAS WITHOUT CLEAR AND CONVINCING EVIDENCE. ........................................................................ 30

IV.   THE DISTRICT COURT ERRED BY IGNORING CLEAR ELEVENTH CIRCUIT LAW IN DECIDING APPELLEE'S UNFAIR COMPETITION CLAIMS AND DENYING THE FAIR USE DEFENSE................................. 40

V.    THE DISTRICT COURT ERRED IN ISSUING AN OVERLY BROAD INJUNCTION AND BY AWARDING ATTORNEYS' FEES......................... 55

CONCLUSION ................................................................................................. 58

## TABLE OF CITATIONS

**Cases:**

*ADT LLC v. NorthStar Alarm Servs., LLC*,
853 F.3d 1348 (11th Cir. 2017) ................................. 2, 30, 31, 32, 33, 35, 36, 38

*Am. Builders Ins. Co. v. S.-Owners Ins. Co.*,
71 F.4th 847 (11th Cir.), *cert. denied*, 144 S. Ct. 423 (2023) ...........................44

*Aronowitz v. Health-Chem Corat*,
513 F.3d 1229 (11th Cir. 2008) .....................................................................22

*Augustine Med., Inc. v. Progressive Dynamics, Inc.*,
194 F.3d 1367 (Fed. Cir. 1999) ..............................................................28, 29, 30

*Baldwin v. Express Oil Change, LLC*,
87 F.4th 1292 (11th Cir. 2023) .....................................................................55

*Bank of Am., N.A. v. Adams (In re Adams)*,
583 B.R. 541 (N.D. Ga. 2018) ......................................................................23

*Bauer Lamp v. Shaffer*,
941 F.2d 1165 (11th Cir. 1991) .....................................................................52

*Beacon Theatres, Inc. v. Westover*,
359 U.S. 500 (1959) ................................................................................21, 22

*Brunswick Corat v. Chrysler Corat*,
408 F.2d 335 (7th Cir. 1969) ........................................................................36

*Burger King Corp. v. E-Z Eating, 41 Corp.*,
572 F.3d 1306 (11th Cir. 2009) .....................................................................44

*Burns v. Lawther*,
53 F.3d 1237 (11th Cir. 1995) ......................................................................23

*Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC*,
605 F.3d 931 (11th Cir. 2010) .............................................................48, 50, 52

*Carnival Brands Seafood v. Carnival Brands, Inc.*,
187 F.3d 1307 (11th Cir. 1999) .....................................................................50

*Carson v. Obor Holding Co., LLC*,
318 Ga. App. 645 (2012) ............................................................................55

*Chase Nat'l Bank v. City of Norwalk*,
291 U.S. 431 (1934).................................................................................32, 35

*Chevron Chem. Co. v. Voluntary Purchasing Grps., Inc.*,
  659 F.2d 695 (5th Cir. 1981) ................................................................45

*Citibank, N.A. v. Data Lease Fin. Corp.*,
  904 F.2d 1498 (11th Cir. 1990) ...........................................................25

*Coen v. CDC Software Corp.*,
  304 Ga. 105, 816 S.E.2d 670 (2018) ...................................................25

*Corn Cabin v. Givens*,
  No. 1391, 1962 WL 8756, 1962 U.S. Dist. LEXIS 4444
  (N.D. Ga. Apr. 2, 1962) .......................................................................44

*Corp. Am. Television & Commc'ns Corp. v. Am. Commc'ns & Television, Inc.*,
  810 F.2d 1546 (11th Cir. 1987) ...........................................................53

*D. H. Pace Co. v. Aaron Overhead Door Atlanta LLC*,
  522 F. Supp. 3d 1315 (N.D. Ga. 2020)................................................45

*D.L. v. Walt Disney Parks & Resorts U.S., Inc.*,
  50 F.4th 1097 (11th Cir. 2022) ............................................................18

*Dairy Queen, Inc. v. Wood*,
  369 U.S. 469 (1962)........................................................................21, 22

*Dieter v. B & H Indus. of Sw. Fla., Inc.*,
  880 F.2d 322 (11th Cir. 1989) .............................................................57

*DraftExpress, Inc. v. Whistle Sports, Inc.*,
  2022 WL 16962285 (C.D. Cal. Aug. 2, 2022) .....................................22

*Dupree v. Younger*,
  143 S. Ct. 1382 (11th Cir. 2023) .........................................................44

*FCOA, LLC v. Foremost Title & Escrow Servs. LLC*,
  57 F.4th 939 (11th Cir. 2023) ..............................................................44

*Fed. Trade Comm'n v. Acquinity Interactive, LLC*,
  2021 WL 4840585 (S.D. Fla. Sept. 29, 2021)......................................33

*Fla. Int'l Univ. Bd. of Trustees v. Fla. Nat'l Univ., Inc.*,
  830 F.3d 1242 (11th Cir. 2016) ...........................................................53

*Frehling Enters., Inc. v. Int'l Select Grp., Inc.*,
  192 F.3d 1330 (11th Cir. 1999) ................................................47, 49, 50

*FTC v. Leshin*,
  618 F.3d 1221 (11th Cir. 2010) ...........................................................33

iv

*Granfinanciera, S.A. v. Nordberg*,
492 U.S. 33 (1989)..................................................................................22

*Granny Goose Foods, Inc. v. Brotherhood of Teamsters*,
415 U.S. 423 (1974)................................................................................56

*Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*,
921 F.3d 1343 (11th Cir. 2019) ......................................18, 40, 41, 43

*Howard Johnson Co., Inc. v. Khimani*,
892 F.2d 1512 (11th Cir. 1990) ...........................................................31

*Info. Sys. & Networks Corat v. City of Atlanta*,
281 F.3d 1220 (11th Cir. 2002) ...........................................................22

*In re Dellinger*,
No. 20-41208-JJR7, 2021 Bankr. LEXIS 2671
(Bankr. N.D. Ala. Sept. 29, 2021) .......................................................25

*Intel Corporation Investment Policy Committee v. Sulyma*,
589 U.S. 178 (2020)................................................................................37

*John H. Harland Co. v. Clarke Checks Inc.*,
711 F.2d 966 (11th Cir. 1983) ..............................................47, 50, 52

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*,
543 U.S. 111 (2004)................................................................................40

*Kizzire v. Baptist Health Sys., Inc.*,
441 F.3d 1306 (11th Cir. 2006) ...........................................................25

*LaMarca v. Turner*,
995 F.2d 1526 (11th Cir. 1993) .....................................................20, 24

*Ling Cui v. United States*,
No. 24-11286, 2024 U.S. App. LEXIS 27723 (11th Cir. Nov. 1, 2024)............26

*Martin-Viana v. Royal Caribbean Cruises Ltd.*,
733 F. Supp. 3d 1308 (S.D. Fla. 2024)...............................................36

*Matthews, Wilson & Matthews, Inc. v. Cap. City Bank*,
312 F. App'x 174 (11th Cir. 2008)......................................................27

*McBride v. Sharpe*,
25 F.3d 962 (11th Cir. 1994) ...............................................................20

*Nat'l Spiritual Assembly of Baha'is of U.S. Under Hereditary*
  *Guardianship, Inc. v. Nat'l Spiritual Assembly of Baha'is of U.S., Inc.*,
  628 F.3d 837, 848 (7th Cir. 2010)), *aff'd sub nom.* No. 23-10453,
  2024 WL 1509156 (11th Cir. Apr. 8, 2024) ......................................................35

*Palmer & Cay, Inc. v. Marsh & McLennan Cos., Inc.*,
  404 F.3d 1297 (11th Cir. 2005) ......................................................................18

*Pinnacle Adver. & Mktg. Group, Inc. v. Pinnacle Adver. & Mktg. Group, LLC*,
  2019 U.S. Dist. LEXIS 160879 (S.D. Fla. 2019) .............................................23

*Planetary Motion, Inc. v. Techsplosion, Inc.*,
  261 F.3d 1188 (11th Cir. 2001) ...........................................................45, 46, 57

*Ragsdale v. Rubbermaid, Inc.*,
  193 F.3d 1235 (11th Cir. 1999) .......................................................................25

*Regal Knitwear Co. v. N.L.R.B.*,
  324 U.S. 9 (1945)............................................................................................35

*Richardson v. Ala. State Bd. of Educ.*,
  935 F.2d 1240 (11th Cir. 1991) .......................................................................25

*RJ's Int'l Trading, L.L.C. v. Crown Castle S., L.L.C.*,
  No. 20-25162-CIV, 2023 WL 2002372 (S.D. Fla. Jan. 13, 2023) ....................35

*Ross Bicycles, Inc. v. Cycles USA, Inc.*,
  765 F.2d 1502 (11th Cir. 1985) .......................................................................50

*Safeway Stores, Inc. v. Safeway Discount Drugs, Inc.*,
  675 F.2d 1160 (11th Cir. 1982) ..................................................................50, 52

*Sims v. Sec'y, Fla. Dep't of Corr.*,
  75 F.4th 1224 (11th Cir. 2023) .......................................................................44

*Sony BMG Music Ent. v. Tenenbaum*,
  672 F. Supp. 2d 217 (D. Mass. 2009).............................................................22

*Southeast Clinical Nutrition Centers, Inc. v. Mayo Foundation for Medial*
  *Education and Research*,
  135 F.Supp.3d 1267 (N.D. Ga. 2013)..............................................................42

*Soweco, Inc. v. Shell Oil Co.*,
  617 F.2d 1178, 1185 (5th Cir. 1980) ...............................................................41

*Stanton v. Stout Kaiser, LLC*,
  2024 Ga. State LEXIS 521 (January 19, 2024) ...............................................28

vi

*Tana v. Dantanna's*,
  611 F.3d 767 (11th Cir. 2010) ...............................................................46, 53, 54

*Thomas v. Home Depot USA, Inc.*,
  661 F. App'x 575 (11th Cir. 2016) ................................................................21, 23

*Thoroughbred Legends, LLC v. The Walt Disney Co.*,
  2008 WL 616253 (N.D. Ga. Feb. 12, 2008 ........................................................40

*Tobinick v. Novella*,
  884 F.3d 1110 (11th Cir. 2018) ...................................................................18, 57

*Tracy v. Wal-Mart Stores Texas, LLC*,
  No. 3:23-CV-169, 2024 WL 3635528 (S.D. Tex. June 26, 2024) .....................37

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
  505 U.S. 763 (1992) ...........................................................................................46

*W. Elec. Co. v. Milgo Elec. Corp.*,
  573 F.2d 255 (5th Cir. 1978) .............................................................................20

*Walsh v. Alliance Property Services, Inc.*,
  2021 WL 1163197 (N.D.N.Y. Mar. 26, 2021) ..................................................37

*Wreal, LLC v. Amazon.com, Inc.*,
  38 F.4th 114 (11th Cir. 2022) ............................................................................43

**Statutes and Other Authorities:**

U.S. Const., amend. VII ...........................................................................................20

15 U.S.C. § 1117(a) .................................................................................................56

28 U.S.C. § 1291 ........................................................................................................1

28 U.S.C. § 1332(a) ...................................................................................................1

Fed. R. App. P. 4(a)(1)(A) .........................................................................................1

Fed. R. Civ. P. 38 ....................................................................................................21

Fed. R. Civ. P. 38(b) ...............................................................................................20

Fed. R. Civ. P. 38(d) ..........................................................................................20, 21

Fed. R. Civ. P. 65 ....................................................................................................36

Fed. R. Civ. P. 65(d)(2)..............................................................................31, 33, 38, 39

Fed. R. Civ. P. 65(d)(2)(C) .....................................................................................33

vii

Ga. Code Ann. § 13-8-53(a) ...............................................................55

Ga. Code Ann. § 13-8-53(d) ...............................................................55

Ga. Code Ann. § 13-8-54(b) ...............................................................55

*Wright & Miller, Federal Practice and Procedure* § 2956 ....................................32

**STATEMENT OF JURISDICTION**

The district court exercised diversity jurisdiction under 28 U.S.C. § 1332(a), with Appellee, a Texas corporation, and Appellants, Georgia residents and entities, and the amount in controversy exceeded $75,000. [Doc. 1].[1]

This Circuit has jurisdiction over the appeal from the district court's final judgment, entered February 28, 2025 [Doc. 198 ("Judgment")], under 28 U.S.C. § 1291, with Appellants' notice of appeal timely filed on March 7, 2025 [11th Cir. Doc. 1-1], per Fed. R. App. P. 4(a)(1)(A).

**STATEMENT OF THE ISSUES**

I.    Whether the district court erred in conducting a bench trial—despite the parties' prior demand for, and the court's ordering of, a jury trial for over a year—particularly where the claims involved issues (i.e. intent determinations) that should have been resolved by a jury.

II.   Whether Appellee's claims were barred by *res judicata* as Appellants' alleged wrongful acts first occurred *before* a consent judgment/settlement agreement was finalized (an issue the district court failed to address).

---

[1] Doc. __ refers to the district court docket, unless otherwise noted.

1

III.    Whether the district court erred in finding Appellee met its burden by clear and convincing evidence that Appellants violated Count I (non-party consent judgment claim) by inferring actual notice and privity contrary to trial testimony and Eleventh Circuit precedent under *ADT LLC v. NorthStar Alarm Servs., LLC*, 853 F.3d 1348 (11th Cir. 2017).

IV.    Whether the district court erred in denying Appellants' summary judgment motion by adopting an "ab initio" theory and failing to apply the necessary likelihood of confusion factors for federal-common law unfair competition claims (Counts II and III) and by finding for Appellee at trial.

V.    Whether the district court erred in imposing overly broad injunction and attorneys' fees against Appellants, contrary to Eleventh Circuit precedent.

## STATEMENT OF THE CASE

This case involves whether a non-party to a prior action can be held liable retroactively for the sins of another, and whether trademark claims concerning public confusion can be proven without any confusion evidence.

### A. Smoothie King's Franchise Operated by the Oyenugas.

For over a decade, the Oyenugas operated a Smoothie King store in Lawrenceville, Georgia. [Doc. 217-27 (D183) (Oyenuga Decl.)]. Following failed inspections, Smoothie King terminated their franchise with the Oyenugas and offered them the opportunity to sell the store under a Mutual Termination Agreement entered

2

March 5, 2020. [Doc. 217-25 (D174)]. With Smoothie King's approval, the Oyenugas introduced Appellant Victome to Smoothie King and encouraged him to apply to become a Smoothie King franchisee. [Doc. 194, Oyenuga at 435:16-25]. Receiving an application and instructions from Smoothie King, Mr. Victome applied but was denied a month later due to insufficient assets. [*Id*.]

### B. Mr. Victome's Plans To Open A Smoothie Business.

Appellants planned to open a smoothie business – either as a Smoothie King franchisee or as an independent entity. [Doc. 212 (P279) at 11–13, 17, 19:10–14]. In February 2020, Mr. Victome hired an architect to help develop plans for his Best Smoothie stores, and formed Monjovic LLC in March 2020. [Doc. 217-2 (D004, Best Smoothie Architectural Agreement); 217-4 (D013)]. After being denied by Smoothie King in April 2020, Mr. Victome continued making strides towards opening a smoothie business, including securing a lease in June 2020 for a "Best Smoothie" store in Loganville, GA. [Id.; Doc. 217-6 (D023)].

### C. The Consent Judgment Between Smoothie King and The Oyenugas.

In June 2020, Smoothie King sued the Oyenugas for trademark-related claims[2] after the Oyenugas refused to unwind their Smoothie King store and operated another

---

[2] Appellee's Complaint included several trademark claims, all centering around "violations of the Lanham Act," specifically under Sections 32 and 43(a) of that Act. [*Oyenuga* Action, Doc. 1 ¶¶77-90].

smoothie business (called "Just Smoothie") at the same location in Lawrenceville, Georgia. [Doc. 212-10 (P272) at 23:9–11, 29:1–3]. On July 10, 2020, the district court issued a preliminary injunction based upon the Lanham Act in the *Oyenuga* Action, ordering the Oyenugas to "[c]ease and desist from using Smoothie King's distinctive service marks and trademarks." [*Oyenuga* Action, Doc. 20]. The preliminary injunction furthered prohibited the Oyenugas from operating a smoothie business, directly or indirectly, within a five (5) mile radius of their store "or any other Smoothie King Unit for two (2) years from the date of this Order." [Id.].

Neither Appellee nor the Oyenugas informed Appellants about this ongoing lawsuit. In July 2020, the Oyenugas offered for sale certain assets to Appellants, including the "Just Smoothie" menus, rights to certain trademarks and equipment, menu boards, countertops and refrigerators pursuant to an asset purchase agreement.[3] [Doc. 196, Oyenuga at 836:22-25; 837:1-3, 858:6-11].

Critically, in July 2020, the asset purchase agreement between the Oyenugas and Appellants required the Oyenugas to provide notice of any pending litigation or claims against the Oyenugas. [Doc. 211-14 (P035)]. Yet both in his deposition and at trial, Mr. Oyenuga admitted he never informed Mr. Victome of any such claims. [ Doc.

---

[3] In August 2020 and again in early 2021, Appellants then bought similar equipment from another Smoothie King franchisee, namely Greg Thomas. [Doc. 212 (P279) at 250:12–25, 251:1–4); Doc. 91-6 at 120:10–16, 253:8–23].

196, Oyenuga at 832:21–833:2; Doc. 212 (P279), Victome Dep. at 2018-19;  Doc. 91-15; Victome II Dep. at 100:16-25, 101:1-5]. Indeed, Mr. Oyenuga testified at trial that not only did he fail to notify Mr. Victome about the pending lawsuit in the *Oyenuga* Action at the time of the asset purchase agreement in July 2020, but he did not believe he could do so later on in October 2020 as the settlement agreement included strict confidentiality obligations preventing him from making such disclosures. [Doc. 196, Oyenuga at 814:10-815:15].

At trial, Mr. Oyenuga testified to defrauding both Mr. Victome and his own daughter by listing their names on corporate documents without their consent:

> **THE COURT**: Mr. Victome testified in this case that he thought you were trying to commit fraud upon him …when you put his name on the corporate documents in June of 2020 for Just Smoothie.
> **THE WITNESS**: Again, I feel so badly because of … my own action. . . . . things that I did without his knowledge…

[Doc. 196, Oyenuga at 845:1–12].

> **THE COURT**: So did she know you were putting her name on this document?
> **THE WITNESS**: No.
> **THE COURT**: So you put not only Victome's name on there without his permission, is your testimony you also put your daughter's name on there without her permission?
> **THE WITNESS:** That's correct.

[*Id*. at 866:8–14].

The *Oyenuga* Action concluded via a confidential settlement agreement and accompanying final, permanent injunction via Consent Judgment, entered on October 17, 2020. [Doc. 211-2 (P002)].  No one disputes that Appellants were not

named parties to either the *Oyenuga* Action, the settlement agreement, or the resulting Consent Judgment.

### D. Smoothie King Proceeds To Sue Appellants Despite Not Being Told About The *Oyenuga* Action.

Appellants were not notified of the Consent Judgment in the *Oyenuga* Action until September 2021—after Appellants had opened Best Smoothie stores in Loganville (October 2020) and Lawrenceville (July 2021). [Doc. 212 (P279) at 213:5–15]. Despite Appellants' lack of awareness or involvement in the *Oyenuga* Action, Appellee proceeded to sue them anyway on October 22, 2021, alleging they violated the Consent Judgment by acting in concert with the Oyenugas and committed unfair competition under the Lanham Act. [Doc. 76 at ¶55].

### 1. Appellee's Alleged Cousin Conspiracy Among The Oyenugas And Appellants.

At trial, Appellee presented no witness testimony stating that Mr. Victome was ever informed of the *Oyenuga* Action or the Consent Judgment. [Doc. 193, Tramuta at 137:4–11]. A landlord for the Oyenugas testified she never spoke to Mr. Victome and first met him at trial, undermining claims that he may have learned of the injunction through her. [Doc. 194, Oates at 425:21–24]. Instead, Appellee relied on speculative and demonstrably inaccurate testimony suggesting that Mr. Victome, a Haitian, and Mr. Oyenuga, a Nigerian, were cousins and that such a purported familial relationship somehow supported that Mr. Victome must have known about

the *Oyenuga* Action. [Doc. 194, Thomas at 46:20-22; Doc. 194, Oates at 129:24-25; 130:1-21]. The record squarely refutes this theory. Testimony established that Mr. Victome and Mr. Oyenuga are not related and were never employed by or shared any business with each other. [Doc. 212-10 (P272) at 72:4–9, 73:1–9 (Ismael Dep.); Doc. 217-13 (D136) Culpepper Dep. at 133:19–25, 134:1–5); Doc. 194, Thomas at 340:14–18, 343:21–25, 344:1–3; Doc. 196, Oyenuga at 797:22–25, 798:1]. Indeed, Mr. Victome never had any ownership interest in the Smoothie King Lawrenceville store, nor did he receive revenue or profit during Mr. Oyenuga's operation of that store. [Doc. 217-27 (D183) ¶8; Doc. 91-14 at 17:4–25, 67:22–24]. Likewise, Mr. Oyenuga had no ownership interest in Monjovic LLC or Best Smoothie and received no revenue or profit from those entities—facts further confirmed by thousands of pages of financial records admitted at trial. [*Id*.; Docs. 217-32 – 217-36].

### 2. Appellee Presented No Evidence of Consumer Confusion or Rebuttal Evidence to Appellants' Survey Expert.

Appellee did not identify any instances of actual confusion between the parties' respective stores. [Doc. 194, Nicosia at 292:20–293:6; *see also* Doc. 91-8 at. 58:21–25, 59:1–4]. Appellee is not aware of any consumer complaining that it believed Best Smoothie was affiliated with Smoothie King. [Doc. 194, Nicosia at

290:4–12].[4] Appellee admitted there was no evidence of any consumer traveling to a Best Smoothie location believing that it was initially a Smoothie King location. [*Id.*; *see also* Doc. 90, Plf.'s Resp. to Defs.' 2d Set of RFA No. 66]. While Appellee relied on self-serving testimony from its own corporate witnesses suggesting that there may have been some customer confusion, no actual customers testified at trial, nor was any evidence presented to support their statements. [Doc. 194, Nicosia at 292-293:7].

Appellants retained Dr. Maronick as a survey expert to assess Appellee's allegations that the public is likely to believe "that the Best Smoothie business and the products and services provided are directly or indirectly associated, affiliated, or connected with, or licensed, sponsored, authorized or approved by Smoothie King." [Doc. 76 at ¶¶61, 65; Doc. 91-33 (Maronick Report)]. For this purpose, Dr. Maronick conducted a Squirt two-room survey which is the general methodology to survey likelihood of confusion. [Doc. 196, Maronick at 873:22–25]. In sum, Dr. Maronick's Survey concluded there was no likelihood of confusion between "Best Smoothie" and "Smoothie King." Specifically, a certain percentage of consumers answered that the following stores are more "directly or indirectly associated with, affiliated or

---

[4] Appellee purported to present a single Google review late at trial, which was disclosed for the first time at trial, and was also hearsay. The district court erred admitting this exhibit at trial. [Doc. 198 at 32 fn. 18].

connected with, or licensed by" Smoothie King than Best Smoothie (12.9%): Planet Smoothie (22.5%), Tropical Smoothie Café (20.7%), Jamba Juice (18.4%), and Smoothie Factory (17.0%), which Dr. Maronick explained at trial. [Doc. 91-33 at 12, Table 6;  Doc. 196,  Maronick at 893:4–12]. Appellee did not present any survey expert or consumer marketing study to refute Dr. Maronick's expert findings and related testimony.

**Figure 1** below shows the parties's logo and storefronts side-by-side (which Dr. Maronick found were not at all likely to cause consumer confusion):



**Best Smoothie's Store Front**       **Smoothie King's Store Front**







**Figure 1**

**Figure 2** below shows a comparison between the parties' menus:

## Best Smoothie's Menu



## Smoothie King's Menu



11

**Figure 2[5]**

Throughout the case, Appellee alleged in conclusory fashion that Appellants

are using "closely similar smoothie categories" as those offered by Appellee.

| Best Smoothie | Smoothie King |
|---|---|
| Stay Fit | Get Fit |
| Stay Active | Stay Slim |
| Snack Well | Be Well |

**Figure 3**

But Appellee presented no evidence of trademark rights in any of those categories.

[Doc. 76 at 46].[6]   Notably, Appellee claimed that only four out of twenty-two

smoothie names caused consumer confusion:

---

[5] Additional trial evidence showed the interior of Appellants' stores, including Appellants' menu as displayed in the stores' interior and in their drive-thru's. [Doc. 217-8 (D067); Doc 217-20 (D156)].

[6] Appellee's smoothie menus change approximately twice a year—consecutively changing in 2018, 2019, 2020, 2021, and 2022. [Doc. 197 at 987, Gewinner Dep. at 12:1-5; Doc. 90-1 at ¶¶68-69; Doc. 95-1 at ¶¶68-69; Doc. 197 at 987, Gewinner Dep. at 25:6-18; Doc. 90-1 at ¶¶70-71; Doc. 95-1 at ¶¶70-71].  Appellee's smoothie categories change based on each smoothie's purpose and function. [Doc. 197 at 987, Gewinner Dep. at 47:15-25; 48:1-9; Doc. 90-1 at ¶75; Doc. 95-1 at ¶75].

| Best Smoothie | Smoothie King |
|---|---|
| The Incredible | The Hulk |
| Angie Food Lean | Angel Food Slim |
| Bahama Way | Caribbean Way |
| Galigan Island | Island Impact |

**Figure 4**

[Doc. 91-8, Nicosia Dep. at 73:21–25, 74:1–20]. Two of the alleged infringed products, Angel Food Slim and The Hulk, are not federally registered trademarks. [Doc. 91-8, Nicosia Dep. at 73:21–25, 74:1–20]. Appellee does not have any ownership right in The Hulk mark, which is owned by a third-party (Marvel Characters). [Doc. 193, Nicosia at 168:10-13]. Most if not all of the allegedly infringing smoothie names asserted by Appellee are descriptive—a fact Appellee conceded. [Doc. 193, Nicosia at 206:15-21; 208-210:4-8; Doc. 197 at 987, Gewinner Dep. at 35:1-6 ([Y]ou want your customers to know exactly which products fall into which category, so they're meant to be descriptive as to which smoothies fit into particular call-out."); Doc. 194, Elibert at 389:7-8; 17-18 (A:…Tropical Smoothie would have something that has mango in it which mango is a fruit; Q: So it's descriptive?; A: Correct). A listing of product names which Appellee alleged were "colorable imitations," in addition to the four names in Figure 4 above it specifically claimed were causing confusion, is provided below in Figure 5:

13

| Best Smoothie | Smoothie King |
| --- | --- |
| Yogurt Mania | Yogurt D-Lite |
| 40 Plus Pro | Gladiator |
| Mango Bang | Mango Fest |
| Keto Madness | Keto Champ |
| Carrot Green | Veggie Carrot Kale Dream |
| Skinny Mate | Slim & Trim |
| Psychoactive Pro | Activator |
| Power Up Bliss | Power Punch Plus |
| Pineapple Bliss | Pineapple Surf |
| Lemon Bliss | Lemon Twist |
| Green Tea Bliss | Green Tea Tango |
| Strawberry Squeeze | Strawberry X-Treme |
| Muscle Blast | Muscle Punch |
| Blueberry Blast | Blueberry Heaven |
| Immune Defense | Immune Builder |
| Peanut Butter Love | Peanut Power Plus |
| Passion Punch | Passion Passport |
| Banana Yummy | Banana Boat |

**<u>Figure 5</u>**[7]

Appellee admitted that other smoothie companies sell smoothies with the same or similar names [Doc. 193, Nicosia at 215:7–18], and specifically disclaims the fruit names that are included in their trademarks – such as "lemon," "strawberry", "passion", "green tea", "yogurt", "pineapple", "blueberry", and "banana." [Doc. 193, Nicosia at 207:1–25; 208:1–25; Doc. 217-23 (D162) at 10-13 (showing third party competitors' use of descriptive names); Doc. 194 at 388:10-19].

---

[7] [See Doc. 217-16 (D151)].

### 3. Appellants' Motion for Summary Judgment.

On April 17, 2023, Appellants filed a motion for summary judgment, asserting that: (1) Appellee's consent judgment claim should be dismissed because Appellants did not have actual notice of the Consent Judgment and were not otherwise engaged in any conspiracy with the Oyenugas so as to knowingly violate the Consent Judgment; and (2) Appellee's unfair competition claim failed because Appellee failed to establish any record evidence showing the likelihood of confusion factors. [Doc. 90]. Importantly, binding precedent in this Circuit required Appellee to establish likelihood of confusion to sustain its unfair competition claims. In opposition to the summary judgment motion, Appellee argued this case was not a standard trademark infringement claim, a notion that the district court agreed to and adopted. [Docs. 95, 112]. Ultimately, the district court denied Appellants' motion, finding—contrary to Eleventh Circuit jurisprudence—that the likelihood of confusion factors need not be established in order for Appellee to prevail on its Lanham-Act related claims. [Doc. 112 at 26–32]. This was in error. Specifically, on this basis, Appellee's claims should not have survived summary judgment and proceeded for ruling at trial.

### 4. From Jury Trial To Bench Trial: The District Court's Resulting Judgment.

In October 2023, the parties submitted a pretrial order requesting a jury trial. [Doc. 104]. At the December 2023 pretrial hearing, Appellee elected a jury trial, and the district court scheduled the case accordingly. [Docs. 121, 145, 150]. However,

15

just weeks before the December 2024 trial dates, Appellee abruptly moved to waive its jury right and requested a bench trial. The district court granted the motion. [Doc. 165]. Appellants, however, never waived their right to a jury trial with respect to their counterclaims or defenses, which included their fair use defense with respect to Counts II and III.

After waiting almost a year for a jury trial, and after granting Appellee's motion to waive its right to a jury trial, the district court conducted a five-day bench trial in December 2024, ultimately ruling in favor of Appellee on February 28, 2025. [Doc. 198 at 27–28]. Specifically having found that Appellants had actual notice and were in privity with the Oyenugas with respect to Count I, the district court imposed a permanent injunction prohibiting Appellants from using "colorable imitations" of Smoothie King's trademarks and from operating smoothie businesses within five miles of any existing Smoothie King location or any "planned" Smoothie King location nationwide for two years. [*Id*.; Doc. 198 at 21–25]. Despite acknowledging the questionable nature of these prohibitions, the district court nonetheless issued the injunction,[8] and also awarded (a) disgorgement in the amount of $373,796.72;

---

[8] During the bench trial, the district court questioned the practical application and enforceability of the Consent Judgment:

and (b) attorneys' fees. [Doc. 198 at 27, 59–60].

With respect to Counts II and III, the court found that four product categories and seven product names[9] were colorable imitations of Smoothie King's marks and, therefore, likely to cause consumer confusion. [Doc. 198 at 18–19, 29, 34–36, 42–43]. In making its finding, the district court also completely disregarded Dr. Maronick's survey, which applies the methodology that is standard in these types of

The Court: It seems like a kind of a weird-use plan for existing, unless at the time that the injunction is issued, the planned locations are known and disclosed. In other words, let's say you have one planned for Monroe. . . . So he [Mr. Victome] doesn't know about it and then if he were to open a store there without knowledge . . . I don't think he could violate it because he wouldn't have notice of the location. But you night [sic] would come in and say, but it doesn't matter. That was our plan. So you see my concern about the enforceability of that and how would I handle that if that were to happen?"

[Doc. 197 at 1118:19–1119].

[9] The seven Best Smoothie product names found to infringe Appellee's marks, with corresponding Smoothie King product names in brackets [], are: (1) Angie Food Lean [Angel Food Slim]; (2) The Incredible [The Hulk]; (3) Keto Madness [Keto Champ]; (4) Power Up Bliss [Power Punch Plus]; (5) Muscle Blast [Muscle Punch]; (6) Passion Punch [Passion Passport]; and (7) Immune Defense [Immune Builder]. [Doc. 298 at 25, fn. 13]. Critically, Appellee does not claim trademark rights over the common words in these product names—"food," "keto," "power," "muscle," "passion," or "immune"—which are widely used in the smoothie industry and are generally descriptive, as Appellee concedes. [See Doc. 193, Nicosia at 207:1–25, 208:1–25; Doc. 197 at 987, Gewinner Dep. at 99, 41:14–16 (testifying that Appellee's "Immune Builder" descriptively conveys the product's purpose of supporting immune system health)].

17

cases. [Doc. 198 at 31, 35]. Finally, regarding attorneys' fees, the district court found an exceptional case based on a cursory, one-paragraph analysis, resting largely on a witness's purported shifting testimony and credibility, a theory lacking precedential support. [Doc. 198 at 59].

## STANDARD OF REVIEW

The Eleventh Circuit employs a dual standard of review for a district court's order containing findings of fact and conclusions of law after a bench trial. *Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1360 (11th Cir. 2019). Conclusions of law are reviewed *de novo*, while findings of fact are reviewed for clear error; and the court's award of an injunction and attorneys' fees are reviewed for abuse of discretion. *D.L. v. Walt Disney Parks & Resorts U.S., Inc.*, 50 F.4th 1097, 1107 (11th Cir. 2022); *Palmer & Cay, Inc. v. Marsh & McLennan Cos., Inc.*, 404 F.3d 1297, 1308 (11th Cir. 2005); *Tobinick v. Novella*, 884 F.3d 1110, 1118 (11th Cir. 2018).

## SUMMARY OF THE ARGUMENT

The district court's judgment should be reversed due to multiple errors:

**1. Jury Trial Waiver**: The district court improperly denied Appellants' jury trial right, despite Appellants' legal defenses and counterclaims and given disputed intent issues. While Appellee waived its right to a jury trial at the eleventh hour, Appellants never did so and the district court's decision to proceed in a bench trial was in error.

**2.** *Res Judicata*/**Claim Preclusion**: Appellee's claims should have been barred by the *Oyenuga* Action, as they arise from the same nucleus of operative facts and could have been raised there. Additionally, Appellee's claims should have similarly been barred by the Settlement Agreement's release entered into by Appellee and the Oyenugas as part of the same action.

**3.  Consent Judgment**: the district court disregards this Circuit's "actual notice" and "privity" standard, required to bind Appellants as non-parties to the Consent Judgment.

**4. Lanham Act claims**: The district court first erred in denying summary judgment when it found that the likelihood of confusion factors were not applicable to Appellee's unfair competition claims, contrary to clear Eleventh Circuit and Georgia precedents. The district court also erred in its attempt to belatedly correct this mistake at trial, by finding that the likelihood of confusion factors were somehow met lacking sufficient trial evidence from Appellee, adopting Appellee's "ab initio" theory unsupported by Eleventh Circuit precedent, and rejecting Appellants' fair use defense.

**5. Injunction/Attorneys' Fees**: The district court's injunction is overly broad, restricting lawful business activities beyond the scope of any violation, and attorneys' fees were unjustified absent exceptional circumstances tied to Appellants' conduct.

19

## ARGUMENT AND CITATIONS OF AUTHORITY

I.    **THE DISTRICT COURT ERRED IN GRANTING A LAST-MINUTE BENCH TRIAL, VIOLATING APPELLANTS' SEVENTH AMENDMENT RIGHT TO A JURY TRIAL.**

The district court's decision to conduct a bench trial, over Appellants' objection, after Appellee's purported late waiver of its jury demand, deprived Appellants of their Seventh Amendment right to a jury trial on legal counterclaims and defenses. This error warrants reversal. This Court reviews *de novo* the district court's decision to forego a jury trial. *McBride v. Sharpe*, 25 F.3d 962, 967-68 (11th Cir. 1994) (interpreting the Federal Rules of Civil Procedure presents a question of law subject to *de novo* review); *LaMarca v. Turner*, 995 F.2d 1526, 1544 (11th Cir. 1993) ("We review the denial of a jury trial with 'the most exacting scrutiny'"); *W. Elec. Co. v. Milgo Elec. Corp.*, 573 F.2d 255, 257 (5th Cir. 1978) ("Unless the error is harmless, we must reverse judgments founded upon an unconstitutional denial of a jury trial.").

   **A. Appellee Elected (Which the Court Granted) a Jury Trial Demand, and Appellants Preserved their Right to a Jury Trial as to their Counterclaims.**

Under Rule 38(b), a party may demand a jury trial on any issue triable by right, and under Rule 38(d), such a demand "may be withdrawn only if the parties consent." Fed. R. Civ. P. 38(d). The Seventh Amendment guarantees a jury trial for legal claims, including those mixed with equitable claims, unless waived by all

20

parties. *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510 (1959); *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 479 (1962). In October 2023, the parties jointly submitted a pretrial order requesting a jury trial. [Doc. 104]. At the December 2023 pretrial hearing, Appellee affirmed its jury trial election, and the district court scheduled a jury trial. [Docs. 121, 145, 150]. Appellants relied on this election, never waiving their jury right on their counterclaims or defenses, including their fair use defense. [Doc. 144 at 12–14; Doc. 197 at 895:10–20]. Indeed, the district court acknowledged that issues like Appellants' alleged "conspiracy" to evade the injunction were "inherently a jury issue." [Docs. 95 at 5; 107 at 2; 134 at 30:15–18, 33:16-25, 43]. Appellants objected, asserting their jury right with respect to their legal counterclaims and defenses. [Doc. 175].

After waiting almost an entire year, and in a surprising last-minute maneuver, the district court granted Appellee's motion, conducting a bench trial without Appellants' consent. [Doc. 165]. This violated Rule 38(d), as Appellants never agreed to withdraw the joint jury demand. *Thomas v. Home Depot USA, Inc.*, 661 F. App'x 575, (11th Cir. 2016) ("Once a demand for a jury trial has been properly served and filed, however, it may be withdrawn only if the parties consent. For purposes of Rule 38, the parties may consent by filing a stipulation to a nonjury trial or by making an oral stipulation on the record.").

21

**B. The Case Involved Legal Issues Triable by Jury.**

As the Supreme Court held in *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510 (1959), the right to a jury trial "cannot be dispensed with, except by the assent of the parties," nor can it be diminished by the blending of legal and equitable claims. *Id.*; *see also Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 479 (1962) (holding that where a defendant's primary defenses present legal questions, the defendant has a right to have the jury determine those defenses and related damages). This case involved multiple "mixed" legal and factual questions—such as Appellants' legal fair use defense—that required resolving any doubts in favor of a jury trial. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 48–49 (1989). *See, e.g., Sony BMG Music Ent. v. Tenenbaum,* 672 F. Supp. 2d 217, 224 (D. Mass. 2009) ("Whether Tenenbaum's use was fair, as he claims, is ultimately a legal question. He has the right to put this matter to a jury . . . if he shows—through specific, credible evidence—that the facts relevant to that legal analysis are in dispute.") (internal citations omitted); *DraftExpress, Inc. v. Whistle Sports, Inc.,* 2022 WL 16962285, at *2 (C.D. Cal. Aug. 2, 2022) (finding fair use is a legal claim). Moreover, the district court's judgment addressed issues of intent—central to Count I and Appellants' counterclaims—an issue the Eleventh Circuit has long held is a factual question for the jury. [Doc. 198 at 42]; *Aronowitz v. Health-Chem Corat,* 513 F.3d 1229, 1237 (11th Cir. 2008) ("The question of intent 'is generally a question of fact' for a jury"); *Info. Sys. & Networks Corat v. City of*

*Atlanta,* 281 F.3d 1220, 1226 (11th Cir. 2002). Accordingly, the district court's decision to resolve these issues via a bench trial usurped the jury's role. Appellants were entitled to a jury trial and that right was never waived.[10]

### C. The District Court's Error Was Not Harmless.

The district court acknowledged potential reversible error, stating: "Maybe the defendant wins [on the jury trial issue] . . . I made the decision I made in good faith believing that I was correct." [Doc. 214 at 20:6–11]. This error was not harmless, as a jury could have reached different conclusions on intent, fair use, and liability, particularly given the disputed evidence on Appellants' knowledge of the injunction. [Doc. 212, Victome Dep. at 2018–19]. Denying a jury trial in such circumstances is presumptively prejudicial. *See Thomas v. Home Depot USA, Inc.,* 661 F. App'x 575, 577 (11th Cir. 2016) (citing *Burns v. Lawther*, 53 F.3d 1237, 1243 (11th Cir. 1995)) (an error may be deemed harmless "only where the issues could have been disposed of on summary judgment or judgment as a matter of law.");

---

[10] *Bank of Am., N.A. v. Adams (In re Adams)*, 583 B.R. 541 (N.D. Ga. 2018) (whether circumstances are sufficient to put a purchaser on notice is a question of fact to be determined by the trier of fact, the jury); *Pinnacle Adver. & Mktg. Group, Inc. v. Pinnacle Adver. & Mktg. Group, LLC*, 2019 U.S. Dist. LEXIS 160879, at *14 (S.D. Fla. 2019) (disputed issues of fact existed with respect to the likelihood of confusion elements, therefore, it "must be decided by a jury"); [Doc 134 at 31:15–18 (Hearing Transcript) (the district court stating whether or not Defendants were involved in a "conspiracy to try to evade the effects of the injunction is "inherently a jury issue")].

23

*LaMarca v. Turner*, 995 F.2d 1526, 1544 (11th Cir. 1993) (jury trial right is fundamental, and its denial requires reversal unless clearly harmless).

## II.   THE DISTRICT COURT ERRED IN FAILING TO FIND THAT APPELLEE'S CLAIMS WERE BARRED BY *RES JUDICATA* AND THE SETTLEMENT AGREEMENT'S RELEASE.

Under Count I (violation of Consent Judgment), the district court found that Appellants were in privity with the Oyenugas because Appellants were "successor[s] in interest to the Just Smoothie business." [Doc. 198 at 23; Doc. 193, Nicosia at 184:8–10]. While Appellants maintain that this finding was itself erroneous (*see* Section III, *infra*), it nonetheless creates another significant and independent bar to Appellee's claims.

If Appellants are in privity with the Oyenugas, then Appellee's claims are barred by the doctrine of *res judicata* (claim preclusion). Similarly, if privity exists, Appellee's claims are also barred by the mutual release in the Settlement Agreement between Appellee and the Oyenugas. Appellee cannot have it both ways. Significantly, although Appellants properly raised these defenses at trial, the district court failed to address them. [Doc. 198]. This was in error. This Court should hold that the finding of privity necessarily compels application of *res judicata*[11] and triggers the settlement release to bar Appellee's claims.

---

[11] Appellants submit that the elements of collateral estoppel (issue preclusion) are also satisfied under the facts of this case.

24

This Court reviews both the application of *res judicata* and the interpretation of a settlement agreement's release *de novo*, as they are questions of law. *Ragsdale v. Rubbermaid, Inc.,* 193 F.3d 1235, 1238 (11th Cir. 1999) ("Barring a claim on the basis of *res judicata* is a determination of law" that we review *de novo*.); *Kizzire v. Baptist Health Sys., Inc.*, 441 F.3d 1306, 1308 (11th Cir. 2006).

### A. Smoothie King's Claims Are Barred By *Res Judicata*.

*Res judicata* bars a claim when (a) the prior judgment was a final judgment on the merits, (b) the parties are identical or in privity, and (c) the claims arise from the same transaction or occurrence. *Coen v. CDC Software Corp.*, 304 Ga. 105, 112, 816 S.E.2d 670 (2018). Each of these elements is met here:

### 1.  There Was A Final Judgment On The Merits.

In the *Oyenuga* Action, the district court entered a Final Consent Judgment and Permanent Injunction, conclusively resolving the claims between Appellee and the Oyenugas. This constitutes a final judgment on the merits under Eleventh Circuit precedent. *Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1501 (11th Cir. 1990); *see also In re Dellinger,* No. 20-41208-JJR7, 2021 Bankr. LEXIS 2671, at *7 (Bankr. N.D. Ala. Sep. 29, 2021) (citing *Richardson v. Ala. State Bd. of Educ.,* 935 F.2d 1240, 1245 (11th Cir. 1991) ("Consent orders have issue preclusive effect as to issues that were 'reasonably foreseen at the time of the agreement.'")). The first element is satisfied.

25

### 2. The Same Parties or their Privies Are Involved in Both Suits.

The district court found that Appellants were in privity with the Oyenugas by virtue of the asset purchase transaction and subsequent conduct. [Doc. 198 at 23]. As a matter of law, this satisfies the "same parties or privies" requirement.

### 3. The Claims in the Second Suit Arise Out of the Same Transaction or Occurrence as Those in the First Suit.

The claims in this action and in the *Oyenuga* Action arise from the same nucleus of operative facts—namely, the unauthorized operation of smoothie businesses after termination of the Oyenugas' franchise by Smoothie King, and the alleged use of "colorable imitations" of Smoothie King's marks. [Doc. 198 at 18–20; *Oyenuga* Action, Doc. 1]. Appellee relied on identical evidence in both cases, including investigative reports, the franchise agreement, the mutual termination agreement, asset purchase agreements, and Just Smoothie's menus and product categories. [Doc. 193 at 180–85]. Undisputably, Appellee was aware of Appellants' involvement during the *Oyenuga* Action—the asset purchase agreement between the Oyenugas and Appellants was filed as evidence in the *Oyenuga* Action. [*Oyenuga* Action, Doc. 16-2]. Indeed, all claims against Appellants could have been raised in the first action, as they arise from the same transactions. *Ling Cui v. United States*, No. 24-11286, 2024 U.S. App. LEXIS 27723, at *6 (11th Cir. Nov. 1, 2024) ("Res judicata extends to every claim arising from the same transaction or series of transactions that could have been raised in the prior action.");

26

*Matthews, Wilson & Matthews, Inc. v. Cap. City Bank*, 312 F. App'x 174, 175 (11th Cir. 2008). The district court's failure to address this defense, despite its presentation at trial, is clear error. [Doc. 144 at 8–10; Doc. 197 at 892:5–15].

**B. The Settlement Agreement's Release Bars Smoothie King's Claims.**

Even apart from *res judicata*, Appellee's claims are independently barred by the express terms of the Settlement Agreement entered into with the Oyenugas. The Settlement Agreement includes a broad release, providing:

> ***Except for obligations undertaken by Oyenuga in this Agreement and the Consent Judgment,*** and except as otherwise provided herein, Smoothie King on behalf of itself and its agents, heirs, sureties, successors, assigns, attorneys, and any other person, corporation, subsidiary, affiliate, association, limited liability company, or partnership taking through or under Smoothie King (collectively, the "Smoothie King Releasors"), ***hereby release and forever discharge Oyenuga and his agents, employees, sureties, predecessors, successors, assigns, attorneys, and any other person, corporation, subsidiary, affiliate, association, limited liability company, or partnership taking through or under Oyenuga*** (collectively, the "Oyenuga Releasees"), ***of and from any and all manner of action, causes of action, debts, liabilities, claims, and demands of every kind made or asserted by either Party in the Civil Action.***

[Doc. 217-26 (D180) at ¶4 (emphasis added)].

This release plainly encompasses Appellee's claims here:

- It releases not only the Oyenugas but also their **successors and assigns**—which the district court found includes Appellants.
- It bars "any and all" claims made or asserted in the prior action, without temporal limitation, including claims of trademark infringement or unfair competition that Appellee asserted here.

27

By its terms, the release is prospective—there is no qualifying language limiting the release to claims accruing prior to the Settlement Agreement's effective date. Notably absent are any terms such as "arising at any time before this agreement" or "all claims of any kind from the beginning of time to the date hereof." *See Stanton v. Stout Kaiser, LLC*, 2024 Ga. State LEXIS 521, *2-3 (January 19, 2024) (finding parties meant to release "each other from claims only up to the effective date of the agreement" because they made it explicitly so by using terms that disclaim future claims).

The release language mirrors that interpreted by the Federal Circuit in *Augustine Med., Inc. v. Progressive Dynamics, Inc.,* 194 F.3d 1367 (Fed. Cir. 1999), where similar terms were held to bar future claims arising from related conduct. *Id. at* 1370-72 (holding a "general release containing very broad language . . . encompasses future claims between the parties," and finding release language such as "any and all manner of action or actions" created a prospective release).

The settlement agreement in *Augustine* stated in relevant part:

> AMI does hereby . . . release and forever discharge PDI from any and all manner of action or actions . . . that AMI and/or its owners . . . have, have had, or may have against PDI upon or by reason of or relating to any acts, omissions or statements made by PDI on or before the date of this Settlement Agreement.

*Id.*

28

The *Augustine* Court specifically held that because the general release contained broad language, such as "'release and forever discharge,' 'any and all manner of action or actions,' 'relating to any acts, omissions or statements made by [defendant],' and 'including, but not limited to, any and all claims that were or could have been asserted by [plaintiff] in the [present lawsuit],'" it encompassed future claims between the parties. *Id.* at 1372. The *Augustine* Court also determined that the release covered any "continuing" infringement, or claims that were continuous in nature or had arisen out of the same or similar nucleus of facts, subsequent to the release. The court explained: "individual causes of action [with respect to infringement] cannot override the unambiguous language of a Settlement Agreement that releases all possible future claims related to the matters settled by the agreement." *Id.* at 1371-72 (noting while the infringement claims in subsequent litigation "are not directly based on [defendant]'s actions prior to the date of the Settlement Agreement, they are sufficiently related to those pre-settlement actions so as to fall within the clear meaning of the language of the agreement"). Like in *Augustine*, a mutual release of all existing and future claims were present in the *Oyenuga* Actio*n*. The parties used similar or identical language to what was used in *Augustine*, including the phrases, "hereby release and forever discharge" and "from any and all manner of action." [*See* Doc. 217-26 (D180) at ¶4]. Moreover, even assuming *arguendo* some of the allegedly wrongful conduct occurred post-

29

settlement, the claims are "sufficiently related" to the pre-settlement facts to fall within the scope of the release. *Id.* at 1371. Here, as of the Settlement Agreement's signing, Appellants had already purchased Just Smoothie's assets, had already opened their Best Smoothie store, and the product lineup found to be infringing already existed. The claims here, like those in *Augustine*, relate directly back to the same business transaction that was the subject of the *Oyenuga* Action and is subject to the release provided in the same. *Id.* at 1371. Appellee's claims in this case were accordingly barred, as they fell squarely within the scope of the release between the Oyenugas and Appellee. This Court should reverse the district court on this issue (which it failed to address) and hold Appellee's claims were barred as a matter of law.

**III.  THE DISTRICT COURT ERRED BY CONCLUDING APPELLANTS HAD ACTUAL NOTICE OF THE INJUNCTION AND WAS IN PRIVITY WITH THE OYENUGAS WITHOUT CLEAR AND CONVINCING EVIDENCE.**

The district court erred in holding that Appellants were bound by the Consent Judgment entered in the *Oyenuga* Action. In particular, the district court failed to adopt this Circuit's binding precedent in *ADT,* 853 F.3d 1348, by improperly relying on insufficient circumstantial evidence to satisfy the "actual notice" requirement and by conflating the distinct requirements of **actual notice** and **privity** (or active concert).

Rule 65(d)(2) provides that an injunction binds only those who receive **actual notice** of it and who either (1) are parties, (2) are officers, agents, or employees of parties, or (3) are persons in **active concert or participation** with parties. *ADT* clarifies that binding a non-party to an injunction requires **both** actual notice and a sufficient relationship of **privity or aiding and abetting** — *and these are distinct elements*. 853 F.3d at 1352–54.

In *ADT*, the Eleventh Circuit vacated a contempt finding against NorthStar, a successor-in-interest to Vision Security, holding that **absent proof of actual notice**, NorthStar could not be bound by the injunction even in light of the clear business ties between the parties. *Id.* at 1353–54. Specifically, circumstantial relationships, speculation, or inferences about business association were not enough. *Id.* Thus, **actual notice** requires more than speculation or proximity; it requires evidence showing that the non-party actually knew of the injunction itself—not merely of some surrounding circumstances or relationships from which one can infer notice. Moreover, actual notice must be proven by clear and convincing evidence. *Howard Johnson Co., Inc. v. Khimani*, 892 F.2d 1512, 1516 (11th Cir. 1990).

*ADT,* in which the appeal presented the question of whether a nonparty can be bound by an injunction as a successor-in-interest, but lacking privity and actual notice of the injunction, is on all fours with this case. In that case, after ADT [Plaintiff], sued Vision Security, for violations of the Lanham Act, the parties agreed

31

to an injunction that prohibited Vision Security from using certain sales tactics and from training "any person who may sell for or solicit customers on behalf of Vision to violate the terms of the Permanent Injunction." 853 F.3d at 1350. NorthStar, then through an asset purchase agreement, acquired customer accounts, rental leases, and other assets from Vision Security and hired Vision Security's senior officers and sales team. *Id.* When NorthStar allegedly used sales tactics prohibited by the injunction, ADT moved the district court to hold NorthStar in contempt of the injunction. *Id.* Vacating the lower court's decision which found NorthStar was bound by the injunction, the Eleventh Circuit found NorthStar could not be bound by the same when it was not in privity with Vision Security and in the absence of any evidence that it had actual notice of the injunction. *ADT* at 1353-54. Here, privity and actual notice are lacking based on comparable facts, including the district court's erroneous conflation of the actual notice prong with the privity prong— treating the latter as evidence of the former. [Doc. 198 at 22–24].

1. **Appellants Were Not in Privity With the Oyenugas so as to Knowingly Violate the Consent Judgment.**

The concept of privity is ultimately bounded by due process, and an injunction may not extend to persons who act independently and whose rights have not been adjudged according to law. *ADT* at 1353-1354 (citing *Chase Nat'l Bank v. City of Norwalk*, 291 U.S. 431, 437 (1934)). *See also Wright & Miller*, *supra*, § 2956 (explaining that a court may not bind a party that is not "so identified in interest with

32

those named in the decree that it would be reasonable to conclude that their rights and interests have been represented and adjudicated in the original injunction proceeding."). The Eleventh Circuit recognizes two categories of nonparties may be bound by an injunction: (1) those in "privity" or a "successor in interest" of the party bound by the injunction; and (2) those "who aid and abet the party bound by the injunction in carrying out prohibited acts." *ADT*, *supra*, 853 F.3d at 1352 (*citing FTC v. Leshin*, 618 F.3d 1221, 1236 (11th Cir. 2010); *Fed. Trade Comm'n v. Acquinity Interactive, LLC*, 2021 WL 4840585, at *4 (S.D. Fla. Sept 29, 2021) ("to be bound by an injunction under Rule 65(d)(2)(C), the party need to have 'played an essential role' in knowingly assisting the party to the injunction carry out the prohibited acts."); *Id.* at 6 ("The "'active concert or participation'" prong of Rule 65(d)(2)(C) . . . must be knowing, and it needs to be directed at the actual prohibited conduct.'")

In *ADT*, NorthStar and Vision Security were not in privity because there was "insufficient evidence to conclude that NorthStar's interests were so intertwined with Vision's that NorthStar should be bound by the injunction [even when the parties had a clear successor-in-interest relationship] . . . NorthStar's sales tactics were clearly established prior to, and independent of, NorthStar's relationship with Vision." *ADT*, at 1353. There was a lack of any evidence that NorthStar had a relationship with Vision before the agreement or that NorthStar and Vision Security controlled each other. *Id.* NorthStar also did not have any involvement in the

33

underlying litigation, and its interests were not represented when the injunction was negotiated. *Id.*

This case is no different. Trial testimony showed Appellants were not in privity with the Oyenugas under the applicable standard. Specifically, Best Smoothie employee Semih Ismael and others testified they never saw Mr. Oyenuga at either of Appellants' Best Smoothie stores, and never saw Mr. Victome work at Mr. Oyenuga's "Just Smoothie" business and had no knowledge of any ownership interest by Mr. Victome in Mr. Oyenuga's "Just Smoothie" business. [Doc. 212-10 (P272) at 73:7-9]. Appellee's own franchisee, Greg Thomas, and their former employee, Ryan Culpepper, testified they never saw Mr. Oyenuga and Mr. Victome together during their respective investigative visits. [Doc. 217-13 (D136) Culpepper Dep. at 133:19-25; 134:1-5); Doc. 194, Thomas at 340:14-18]. Neither were aware of Wale Oyenuga and Jean Victome engaging in any business together. [Id.]. It is undisputed that Mr. Victome ever had an ownership interest in the Oyenugas' Lawrenceville Smoothie King store, and never received any revenue or profit during Mr. Oyenuga's operation of that store. [Doc. 217-27 (D183) ¶8); Doc. 91-14 at 17:4-16]. Via written affidavit and deposition testimony, Mr. Oyenuga swore under oath that Mr. Victome was "never part" of any business of Mr. Oyenuga and the two never worked together. [Id.; Doc. 91-14 at 17:17-25; 67:22-24)]. Appellee has relied heavily on a corporate filing made by Mr. Oyenuga in which he listed Mr. Victome

34

as an officer of Just Smoothie, but Mr. Oyenuga later admitted this was done on his own volition, committing fraud on Mr. Victome. [Doc. 217-27 (D183) ¶12].

A contractual relationship—*i.e.*, the Oyenugas' sale of Just Smoothie to Mr. Victome—is not sufficient to establish privity. *ADT*, at 1353; *RJ's Int'l Trading, L.L.C. v. Crown Castle S., L.L.C*., No. 20-25162-CIV, 2023 WL 2002372, at *8 (S.D. Fla. Jan. 13, 2023) (finding that, under Rule 65, privity is broader than a mere contractual relationship (citing *Nat'l Spiritual Assembly of Baha'is of U.S. Under Hereditary Guardianship, Inc. v. Nat'l Spiritual Assembly of Baha'is of U.S., Inc.*, 628 F.3d 837, 848 (7th Cir. 2010)), *aff'd sub nom*. No. 23-10453, 2024 WL 1509156 (11th Cir. Apr. 8, 2024); *Regal Knitwear Co. v. N.L.R.B*., 324 U.S. 9, 13 (1945) ("The courts . . . may not grant an enforcement order or injunction so broad as to make punishable the conduct of persons who act independently and whose rights have not been adjudged according to law."); *Chase Nat'l Bank*, 291 U.S. at 437 ("[B]y extending the injunction to 'all persons to whom notice of the injunction should come,' the District Court assumed to make punishable as a contempt the conduct of persons who act independently. . .").

## 2. **Appellants Did Not Receive Actual Notice of the Injunction.**

Regarding the "actual notice" element, the district court improperly found circumstantial evidence to suffice for finding "actual" notice and treated alleged "privity" between Appellants and the Oyenugas as a substitute for actual notice.

[Doc. 198 at 22–24]. It found Appellants had "actual notice" based on circumstantial evidence regarding their interactions with the Oyenugas, despite no evidence showing Appellants knew about the Consent Judgment during the relevant period. This was in error. Contrary to *ADT*, the district court here failed to separately analyze whether Appellants had independent actual knowledge of the injunction at the time they allegedly acted in concert. [Id.]

The district court acknowledged that direct evidence of actual notice was absent but relied on "circumstantial evidence" such as asset transfers, shared business names, and assumptions of leases. [Doc. 198 at 22–24]. Yet under *ADT* and similar authority, such circumstantial evidence, without more, is **insufficient** to establish actual notice. *See ADT*, 853 F.3d at 1353 ("NorthStar cannot be bound by the injunction . . . absent any evidence that it had notice of the injunction.") *Brunswick Corat v. Chrysler Corat*, 408 F.2d 335, 337 (7th Cir. 1969) (successor bound only where it purchased with knowledge of injunction); *Martin-Viana v. Royal Caribbean Cruises Ltd.*, 733 F. Supp. 3d 1308, 1342 (S.D. Fla. 2024) (noting the Eleventh Circuit has held "circumstantial evidence is insufficient to establish actual notice"—"The Eleventh Circuit observed there was no evidence to establish actual notice, and circumstantial evidence, without more, did not suffice."); *Acquinity Interactive,* 2021 WL 4840585, at *4 (finding "actual notice" upon one non-party "as he saw it [the injunction] and was made aware of it by" the enjoined

36

party's CEO); *compare with id.* at *5 (finding against actual notice upon another non-party as "a conversation with [the enjoined party's CEO] about the *Acquinity* litigation in general does not confer 'actual notice' of a settlement order"); *Walsh v. Alliance Property Services, Inc.*, 2021 WL 1163197, at *2 (N.D.N.Y Mar. 26, 2021) ("'Actual notice' is defined as '(n)otice given directly to, or received personally by, a party.'") (quoting BLACK'S LAW DICTIONARY (11th ed. 2019)); *Intel Corporation Investment Policy Committee v. Sulyma*, 589 U.S. 178, 189 (2020) (affirming underlying decision as "the court construed 'actual knowledge' to mean "what it says: knowledge that is actual, not merely a possible inference from ambiguous circumstances."); *Tracy v. Wal-Mart Stores Texas, LLC*, No. 3:23-CV-169, 2024 WL 3635528, at *3 (S.D. Tex. June 26, 2024) ("While circumstantial evidence is often used to infer constructive notice, the circumstantial evidence alone is insufficient to establish actual notice.").

The district court's finding of actual notice is erroneous, as the record contains no direct evidence that Appellants were aware of the *Oyenuga* Action or the injunction until September 16, 2021, when Appellee first communicated with Victome about the Consent Judgment. [Doc. 212 (P279), Victome Dep. at 2018–19; Doc. 91-15, Victome II Dep. at 100:16–25, 101:1–5]. Key testimony and documents confirm this timeline:

37

- **Wale Oyenuga's Testimony**: Oyenuga testified that he never informed Victome of the injunction or the lawsuit against him. [Doc. 196, Oyenuga at 832:21–23, 833:1–2].

- **Smoothie King's Franchise Development Director**: Chad Tramuta, Smoothie King's Director of Franchise Development testified he never informed Mr. Victome of Smoothie King's issues with the Oyenugas. [Doc. 193, Tramuta at 137:4–11]. Similarly, none of Appellee's witnesses testified they ever told Appellants about the lawsuit or the Consent Judgment. [Doc. 193, Tramuta at 138:8–12].

- **Landlord's Testimony**: Katharine Oates, the landlord for the 3375 Sugarloaf Store, confirmed she never spoke to Victome, undermining claims that he may have learned of the injunction through her. [Doc. 194, Oates at 425:21–24].

Even if circumstantial evidence could suffice under *ADT*, the evidence identified by the court—including the timing of the July 2020 Agreement, Victome's alleged involvement in creation of Just Smoothie's product names, and fraudulent corporate filings—is insufficient to meet Appellee's high burden (clear and convincing evidence) [Doc. 196, Oyenuga at 845:1–12]. Indeed, the court incorrectly held that knowledge of the general business relationship or legal disputes involving the Oyenugas sufficed to establish knowledge of the **specific** injunction—ignoring that Rule 65(d)(2) requires notice of the *injunction itself*, not the underlying litigation. *See ADT*, 853 F.3d at 1353. For example, the district court noted that Victome's claim of creating the "Galigan Island" product name suggested involvement with Just Smoothie (in spite of all the evidence to the contrary), implying knowledge of the litigation. [Doc. 198 at 22–23; *see* Doc. 212-10 (P272) at 73:7-9; Doc. 217-27 (D183) ¶8)]. However, this inference does not establish that

38

Victome knew of the injunction itself, as required by Rule 65(d)(2). Similarly, the court's reference to the July 2020 Agreement's reduced purchase price ($15,000 vs. $250,000 in March 2020) as evidence of awareness of the impending injunction suffers the same flaw and is not supported—it does not establish knowledge of the injunction itself. [Doc. 198 at 24]. Moreover, Mr. Victome plausibly explained at trial why the purchase price was significantly reduced (i.e. he was purchasing a known and established franchise (Smoothie King) in March of 2020 versus purchasing the assets of a single, unproven shop (Just Smoothie) in July 2020). [Doc. 195, Victome at 676:10-19]. There is simply no evidence showing Mr. Victome was informed of the litigation or injunction during this time. Moreover, the corporate filings listing Victome as an officer of Just Smoothie were made by Oyenuga without Victome's permission, as Oyenuga admitted. [Doc. 217-27 (D183) ¶12]. *See Acquinity Interactive,* 2021 WL 4840585, at *4 (finding actual notice where nonparty saw the injunction and was informed by the enjoined party's CEO); *id.* at *5 (no actual notice even from general conversation about litigation). Accordingly, the district court erred in its finding of actual notice based on insufficient circumstantial evidence and privity. [Doc. 198 at 22–24].[12]

---

[12] The district court also failed to appreciate the clear and convincing burden for proving that the consent judgment applied to a non-party. [Doc. 198 at 20-26.]

**IV. THE DISTRICT COURT ERRED BY IGNORING CLEAR ELEVENTH CIRCUIT LAW IN DECIDING APPELLEE'S UNFAIR COMPETITION CLAIMS AND DENYING THE FAIR USE DEFENSE.**

A defendant is entitled to the fair use defense if it establishes that it used the challenged terms at-issue "'(1) other than as a mark, (2) in a descriptive sense, and (3) in good faith.'" *Hard Candy,* , 921 F.3d at 1363 ; 15 U.S.C. § 1115(b)(4). Fair use is a quintessential affirmative defense in a trademark case as it does not bear on the likelihood of confusion. *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 118-20 (2004). The court erred in rejecting Appellants' fair use defense. [Doc. 198 at 41-43].

As to the first element, trial evidence did not show Appellants used their smoothie names, fruit logo and related advertising (including their menus) as a trademark. [See, e.g., Doc. 211-34 (P076)]. No notice referencing any TM superscript or R registration symbol was used or advertised. [*Id.*] Out of over forty names on Appellants' menu of smoothie offerings, only one (i.e., Galigan Island) was ever pursued as a potential trademark right, which was swiftly rejected per Georgia's Secretary of State records. [Doc. 212-18(P052)]. In *Thoroughbred Legends, LLC v. Walt Disney Co.*, it was held that ESPN did not use the phrase "Ruffian" as the title of a movie, in a trademark sense, because it appeared on DVDs under the logo "ESPN Home Entertainment". *Thoroughbred Legends, LLC v. The Walt Disney Co.*, 2008 WL 616253 at *9 (N.D. Ga. Feb. 12, 2008). Similarly as is

40

the case here, trial evidence showed that Appellants advertise their brand name "Best Smoothie" along with its fruit logo or image in promoting its business. Appellee even made it clear that it is not challenging Appellants' use of its brand name "Best Smoothie" or its fruit logo with respect any allegations of confusion. [Doc. 193, Nicosia at 186:15-18; Doc. 194 at 288:4-7; 293:1-6]. As such, the Court failed to find this element in favor of Appellants.

As to the second element regarding descriptiveness: "'The 'fair-use' defense, in essence, forbids a trademark registrant to appropriate a descriptive term for [its] exclusive use and so prevent others from accurately describing a characteristic of their goods.'" *Hard Candy*, 921 F.3d at 1363; *Soweco, Inc. v. Shell Oil Co*., 617 F.2d 1178, 1185 (5th Cir. 1980)). A descriptive mark "identifies a characteristic or quality of an article or service as, for example, its color, odor, function, dimensions, or ingredients." *Hard Candy*, 921 F.3d at 1363 (quoting *Soweco, Inc*., 617 F.2d at 1183). A term that describes flavor is descriptive. *Invisasox, LLC v. Everything Legwear*, LLC, 2020 WL 3128864, at *3 (M.D. Fla. June 12, 2020) ("descriptive, a term that describes a characteristic or quality about the product (e.g. APPLE for apple-flavored drinks)). Here, many of the Appellants' smoothie names (if not almost all of them) are descriptive in nature as they are describing a type of flavor or ingredient to the public. [Doc. 211-34 (P076, (Best Smoothie Menu); Doc. 212-5 (P219) (Appellants' Peanut Butter Love includes peanut butter, Banana Yummy

41

including banana etc.).  Appellee admitted that it disclaims fruit names in its own trademark registrations  [Doc. 193, Nicosia at 207:7-22; 208:1-25; 209:1-6] and that the allegedly infringing product names are used descriptively and extensively in the smoothie  industry by competitors [Doc. 193,  J. Nicosia at 173:7-25; 207:10-25, 208:1-25 (testifying that use of the names Passion, Green Tea, Yogurt, and Pineapple are all descriptive);; Doc. 194,  Elibert at 389:7-8; 17-18; ];*see also* Doc. 197, at 987, Gewinner Dep. at 35:1-6 ([Y]ou want your customers to know exactly which products fall into which category, so they're meant to be descriptive as to which smoothies fit into particular call-out.");

As to the third element, and to assess a person's good faith, the court must inquire into the "subjective purpose" in using the terms at-issue. *Southeast Clinical Nutrition Centers, Inc. v. Mayo Foundation for Medial Education and Research*, 135 F.Supp.3d 1267 (N.D. Ga. 2013).  Appellants here believed they were acquiring certain assets, including furniture, equipment and intellectual property from the Oyenugas under the purchase agreement, which they thought were free and clear of any encumbrances or third-party claims such as the Consent Judgment. [Doc. 212 (P279), J. Victome Dep. at 139:19-24]. Accordingly, this Court should reverse the district court's denial of Appellants' fair use defense.

With respect to Appellants' affirmative claims, the district court's determination of unfair competition rested on an "ab initio" theory of liability—

42

imputing the acts of a former franchisee to a third party—which has never been recognized by the Eleventh Circuit. [Doc. 198 at 34–41]. Relying on a 60-year-old, outdated Georgia decision, the court failed to apply the established likelihood of confusion factors at summary judgment and overlooked the clear absence of evidentiary support for those factors at trial. [Doc. 198 at 41–43]; *Hard Candy,* 921 F.3d at 1363. The court erroneously concluded that the likelihood of confusion analysis was unnecessary both at summary judgment and at trial. [See Doc. 198 at 37 (finding "this is not a standard infringement case narrowly confined to the parties' respective marks, per se."); Doc. 102 at 26–31; Doc. 144].

## A. The District Court Erred in Denying Appellants' Summary Judgment Motion.

In general, a court errs if it fails to apply the likelihood of confusion factors on summary judgment in a trademark infringement case. *Wreal, LLC v. Amazon.com*, *Inc*., 38 F.4th 114, 127 (11th Cir. 2022). The likelihood of confusion is a critical element in determining trademark infringement under the Lanham Act, and courts generally use a multifactor test to assess it. *Id.* at 127 (When deciding a motion for summary judgment, courts must consider each of the seven factors and evaluate the weight to be given to each factor based on the specific circumstances of

43

the case). This Court reviews *de novo* the denial of a motion for summary judgment. *Burger King Corp. v. E-Z Eating*, 41 Corp., 572 F.3d 1306, 1313 (11th Cir. 2009).[13]

Here, without acknowledging any of the likelihood of confusion factors, the district court denied Appellants' motion for summary judgment stating that this case "is not a standard trademark infringement case narrowly confined to an assessment of the parties' respective marks." [Doc. 112]. In adopting such belief, the court incorrectly relies on a Northern District court case that was decided over sixty (60) years ago, *Corn Cabin v. Givens*, No. 1391, 1962 WL 8756 (N.D. Ga. Apr. 2, 1962)—a decision that predates modern Lanham Act jurisprudence and has no precedential value.

This Circuit has unequivocally confirmed that unfair competition claims require proving the likelihood of confusion factors. *See FCOA, LLC v. Foremost Title & Escrow Servs. LLC*, 57 F.4th 939, 945 (11th Cir. 2023) ("The District Court

---

[13] Because the district court's denial of Appellants' motion for summary judgment raised purely legal issues, and not genuinely disputed issues of material fact, they are preserved and can be raised on appeal. *Sims v. Sec'y, Fla. Dep't of Corr.*, 75 F.4th 1224, 1227 (11th Cir. 2023) ("[A] purely legal issue resolved at summary judgment is reviewable on appeal even if the losing party failed to renew its arguments at or after trial." (citing *Dupree v. Younger*, 143 S. Ct. 1382, 1389 (11th Cir. 2023)); *see also Am. Builders Ins. Co. v. S.-Owners Ins. Co.*, 71 F.4th 847, 860 (11th Cir.) ("Purely legal issues raised at the summary-judgment stage are unaffected by future developments in the case, like the presentation of evidence at trial, so "there is no benefit to having a district court reexamine" them after a trial." (citation and quotation marks omitted)), *cert. denied*, 144 S. Ct. 423 (2023).

correctly recognized that FIC's trademark infringement and unfair competition claims . . . do all require a showing of likelihood of confusion."); *D. H. Pace Co. v. Aaron Overhead Door Atlanta LLC*, 522 F. Supp. 3d 1315, 1328 (N.D. Ga. 2020) (citing *Planetary Motion, Inc. v. Techsplosion, Inc*., 261 F.3d 1188, 1193 (11th Cir. 2001)) (federal unfair competition requires a plaintiff to show that consumers were likely to confuse the marks at-issue); *Chevron Chem. Co. v. Voluntary Purchasing Grps., Inc.*, 659 F.2d 695 (5th Cir. 1981) (appellants' state and federal law claim for unfair competition both required a showing of likelihood of confusion). Because Appellee failed to present evidence of the likelihood of confusion at summary judgment, the district court's denial of Appellants' motion was error.

### B. The District Court Erred in Concluding the Likelihood of Confusion Factors Were Met Lacking Sufficient Evidence.

Throughout the proceedings, Appellee consistently argued that it was not required to prove any of the likelihood of confusion factors, a position that directly conflicts with well-established Eleventh Circuit precedent. [See Doc. 197 at 1104:4–17 ("Our position is that you would not have to apply these seven specific likelihood of confusion factors on these particular facts because of the unique circumstances of the origin of the tainted and intellectual property.")].

To compensate for Appellee's failure to prove these factors, the district court applied them itself in what appeared to be a last-ditch effort to salvage Appellee's case—as an alternative to the court's adoption of Appellee's "fruit of the poisonous

tree," "ab initio" theory. [Doc. 198 at 34–41]. Yet even applying the traditional multifactor analysis, Appellee failed to present sufficient evidence to satisfy any of the required elements (as this was clearly an afterthought in Appellee's strategy). The most glaring example of this evidentiary failure is the court's reliance on an untimely-disclosed, hearsay Google review to support a finding of consumer confusion, notwithstanding expert testimony to the contrary.[14]

The Eleventh Circuit uses a seven-factor test to determine likelihood of confusion: (1) strength of the mark; (2) similarity of the marks; (3) similarity of the goods or services; (4) similarity of sales methods; (5) similarity of advertising methods; (6) intent of the alleged infringer; and (7) actual confusion. *Tana v.*

---

[14] Further, the district court erred in finding that Appellee had established ownership rights in menus. [Doc. 198 at 30; Doc. 91-8, Nicosia Dep. at 73:21–25, 74:1–20; Doc. 193, Nicosia at 168:10-13, 206:15-21, 208-210:4-8; Doc. 197 at 987, Gewinner Dep. at 35:1-6; Doc. 194, Elibert at 389:7-8; 17-18]. Appellee specifically testified to objecting to the overall look and feel of Appellants' business as a whole. [Doc. 194, Nicosia at 296:17-19]. But one cannot own trademark rights to a menu. *See, e,g., Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 764 (1992) ("Trade dress is the total image of the business. Defendant's trade dress may include the shape and general appearance of the exterior of the restaurant, the identifying sign, the interior kitchen floor plan, the decor, the menu, the equipment used to serve food, the servers' uniforms and other features reflecting on the total image of the restaurant."). Accordingly, lacking trademark rights, they cannot be used to establish likelihood of confusion. *See, e.g,, Planetary Motion,* 261 F.3d at 1200 (finding ownership of trademark is a predicate that must be satisfied before finding infringement).

*Dantanna's*, 611 F.3d 767, 774–75 (11th Cir. 2010). Appellants address each factor in turn below.

     **a.**     **Strength of the Mark**: The district court erred in finding Smoothie King's marks to be distinctive without evidence of their strength. [198 at 30-31]. In conclusory fashion, the district court relied on the fact that some of the marks were registered alone to find their strength was somehow incontestable. [Id.] This is wrong on several levels. First, of the 7 products names that the district court found to be infringed, two are not federally registered (The Hulk and Angel Food Slim), hence they could not possibly enjoy any incontestable status. [Doc. 91-8, Nicosia Dep. at 73:21–25, 74:1–20]. Moreover, for this factor, the critical consideration is the "degree to which third parties make use of the mark." *Frehling Enters., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1336 (11th Cir. 1999) (*citing John H. Harland Co. v. Clarke Checks Inc.*, 711 F.2d 966, 974-75 (11th Cir. 1983) ("The less third parties use the mark, the stronger it is, and the more protection it deserves.").

     Here, Appellee presented no evidence of its marks' commercial strength, such as consumer recognition or advertising expenditure. [Doc. 194, Nicosia at 290:4–12]. The generic and descriptive terms that Appellee used for its products, such as "smoothie" "angel," "hulk," "power," "keto," and "immune" are generic or descriptive— often specifically disclaimed in Appellee's registrations, and widely used by competitors in the smoothie industry. [Doc. 197 at 987, Gewinner Dep. at

41:14-16 (testifying that Smoothie King's Immune Builder is used descriptively to convey it will help customers build or strengthen their immune system); Doc. 193, Nicosia at 186:13–14; Doc. 91-8 at 75:20–25, 149:9–25; 150:1-–15; Doc. 217-23 (D162) at 10 (showing third party competitors' use of descriptive names)]. Indeed, the district court's conclusion that Appellee's marks are distinctive ignores this widespread third-party use, weakening the marks' protectability. This factor weighs against likelihood of confusion.

**b.** **Similarity of the Mark**: "When analyzing the similarity of the mark, the court must consider the overall impression created by the marks, including a comparison of the appearance, sound and meaning of the marks, as well as the manner in which they are displayed." *Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC*, 605 F.3d 931, 939 (11th Cir. 2010).

The district court erred in finding that the parties' marks were similar. [Doc. 198 at 31]. Its analysis improperly emphasized the alleged similarities between Appellee's and Best Smoothie's product names—many of which, as discussed above, are descriptive and commonly used across the smoothie industry. Given the widespread use of these terms by numerous competitors (which was admitted by Appellee's own general counsel), any overlap carries little weight in the likelihood of confusion analysis. See [Doc. 91-8 at 75:20–25; 76:1; 149:9–25; 150:1–15; Doc. 91-23, 91-24, and 91-25].

The court's additional conclusion—that the marks are similar because the products contain similar ingredients—is a red herring. [Doc. 198 at 31]. The use of common ingredients in product offerings with descriptive names (including the same fruits), is an industry norm, not evidence of copying. This factor cannot be assessed in isolation; rather, it must account for the norms of the smoothie industry and the overall impression conveyed to consumers.

    **c.**    **Similarity of the Products**: This factor requires a determination as to whether the products are the kind that the public attributes to a single source, not whether the purchasing public can readily distinguish between the products of the respective parties. *Frehling*, 192 F.3d at 1338. The test "is whether the goods are so related in the minds of consumers that they get the sense that a single producer is likely to put out both goods." *Id*.

The court ignored the results of Dr. Maronick's Squirt survey as well as his testimony regarding the inherent similarity of offerings among competitors producing smoothies. [Doc. 196, Maronick at 893:4–12]. Dr. Maronick's survey found that the public does not attribute frozen smoothie beverages to a single source because there are numerous competitors in the marketplace offering similar frozen smoothie beverages, such as Planet Smoothie, Tropical Smoothie Café, Jamba Juice, and Smoothie Factory. [Id.; Doc. 91-33 at 12, Table 6; Doc. 196, Maronick at 888:8–16; Doc. 91-34, Maronick Dep. 68:18–69:12). Trial evidence showed that both

49

parties' smoothies offer different juices and produce. [Doc. 91-28 at 79:12–22:80:15–22; Doc. 196, Victome at 743:3–8]. In discussing this factor, the district court relied on a single customer review on Google purportedly comparing the parties' products. [Doc. 198 at 32]. However, this Google review was never produced timely and also constituted hearsay. [Doc. 195 at 562:6–10; Doc. 198]. This factor weighs against likelihood of confusion, and the district court erred by finding that it weighed in Appellee's favor.

d.    **Similarity of Actual Sales Methods and Advertising Methods**: The parties' sales methods "takes into consideration where, how, and to whom the parties' products are sold." *Caliber Automotive Liquidators, Inc. v. Premier Chrysler*, *Jeep, Dodge, LLC*, 605 F.3d 931, 940 (11th Cir. 2010). "The greater the similarity in advertising campaigns the greater the likelihood of confusion." *Ross Bicycles. Inc. v. Cycles USA, Inc*., 765 F.2d 1502, 1508 (11th Cir. 1985); *Carnival Brands Seafood v. Carnival Brands, Inc*., 187 F.3d 1307, 1313–14 (11th Cir. 1999); *John H. Harland*, 711 F.2d at 976. When evaluating similarity of advertising, the standard is whether there is likely to be significant enough overlap in the readership of the publications in which the parties advertise such that a possibility of confusion could result. *Frehling*, 192 F.3d at 1340 (*citing Safeway Stores, Inc. v. Safeway Discount Drugs, Inc*., 675 F.2d 1160, 1166 (11th Cir. 1982)).

The district court erred when finding that this factor favored Appellee. The district court's ruling relies on the parties' menu boards in their stores, drive-thru menu boards, and product brochures. [Doc. 198 at 33]. But these items are meant to inform customers—who are already on the premises—of the restaurant's product offerings, not advertise products to potential customers.

Additional trial evidence showing that the parties engaged in different advertising strategies, largely due to the two shops' difference in size and reach. Specifically, Smoothie King's sales are substantially higher, and its advertising methods are much more expansive than Appellants' efforts. [Doc. 193, Nicosia at 166:14–18; Doc. 197 at 987, Gewinner Dep. at 15:14–20; 16:4–12; and 17:3–25]. In contrast, Appellants simply operate two "mom-and-pop" locations in close proximity and maintain an unsophisticated website. Appellee buys national media (including TV, radio, billboards, social media ads), has a national and local marketing spend, and engages in extensive advertising sponsorships. [Id.] Smoothie King has more than 1,400 stores, and thus, has a greater market presence and recognition than Appellants. [Doc. 193, Nicosia at 161:15–21]. The parties' respective advertising is not confusingly similar. Therefore, this factor does not support any likelihood of confusion.

e.    **Intent of Infringing Party**: If a party adopts another's mark with the intent of obtaining benefit from its reputation, such "may be sufficient to justify the

51

inference that there is confusing similarity." *John H. Harland*, 711 F.2d at 977. "When analyzing an alleged infringer's intent, we must determine whether the defendant adopted a plaintiff's mark with the intention of deriving a benefit from the plaintiff's business reputation." *Caliber Auto. Liquidators, Inc.*, 605 F.3d at 940; *Bauer Lamp v. Shaffer*, 941 F.2d 1165, 1172 (11th Cir. 1991) (per curiam); *Safeway Stores, Inc. v. Safeway Discount Drugs, Inc.*, 675 F.2d 1160, 1164 n.4 (11th Cir. 1982)

Contrary to the district court's findings, the evidence does not support that Appellants acted with the intent to confuse customers. In fact, Appellant Victome applied to become Appellee's franchisee, [Doc. 212 (P279) Victome at 28:8–12; Doc. 90-1 at ¶35; Doc. 95-1 ¶35], which Appellee rejected. [Doc. 212 (P279) Victome at 58:5–9; Doc. 90-1 at ¶37; Doc. 95-1 at ¶37]. He separately formed Monjovic, LLC for purposes of operating a smoothie business. [Doc. 212 (P279) Victome at 58:22–24; Doc. 91-1 at 3; Doc. 95-6 at 9, 25–26)]. Mr. Victome also entered into the purchase asset agreement with the Oyenugas – i.e., he thought he was legally purchasing certain assets without infringing upon Smoothie King's trademark rights. [Doc. 211-12 (P026); Doc. 95-1 at ¶36; Doc. 90-1 at ¶36; Doc. 95-1 at ¶36].

**f.    Actual Confusion**: The district court's finding that the actual confusion factor favors Smoothie King is unsupported by the record and misapplies Eleventh

52

Circuit precedent. Actual confusion, the most persuasive factor in assessing likelihood of confusion, requires evidence of real consumers who were confused by the defendant's marks. *Tana v. Dantanna's*, 611 F.3d 767, 779 (11th Cir. 2010). Testimony from non-consumers carries little weight, and significant evidence is needed to establish this factor. *Corp. Am. Television & Commc'ns Corp. v. Am. Commc'ns & Television, Inc.*, 810 F.2d 1546, 1550 (11th Cir. 1987); *Fla. Int'l Univ. Bd. of Trustees v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1264 (11th Cir. 2016) (one confused consumer insufficient).

Here, the district court erred by relying on evidence from the Oyenugas' transition from Smoothie King to Just Smoothie to impute confusion to Best Smoothie. [Doc. 198 at 34-36]. Throughout the trial, Smoothie King called seven witnesses, none of whom were consumers [Doc. 193–197]. The court cited testimony from a former employee, Semih Ismael, about customer and employee confusion during Just Smoothie's botched rebranding, when Smoothie King signage, uniforms, napkins, and products were still present. [Doc. 196 at 777, 785–86]. This testimony concerned Just Smoothie's operations, not Best Smoothie's, and is irrelevant to whether Best Smoothie's marks caused confusion. The court's inference that alleged confusion during Just Smoothie's rebranding extends to Best Smoothie—due to Best Smoothie's acquisition of Just Smoothie's menu—lacks

53

legal or evidentiary support. No Eleventh Circuit precedent permits imputing a non-party's actions to a defendant in establishing actual confusion.

Indeed, the district court failed to acknowledge that any confusion surrounding Just Smoothie's operations stemmed from Wale Oyenuga's failure to fully rebrand—Oyenuga retained Smoothie King signage, red uniforms, and similar or identical smoothie offerings at the same location—effectively rebranding as "Just Smoothie" overnight. [Doc. 193, Nicosia at 69–70; Doc. 212-10 (P001)]. In contrast, Best Smoothie never operated at the 3375 Sugarloaf location, used distinct green uniforms, and employed different recipes and ingredients for its smoothies. [Doc. 212-10 (P272); Doc. 91-28 at 79:12–22, 80:15–22; Doc. 196 at 743:3–8]. No evidence shows commingling of any kind of Smoothie King's marks or products at Best Smoothie's locations and Appellee produced no consumer testimony, surveys, or other direct evidence of confusion caused by Best Smoothie's marks. . [Doc. 194, Nicosia at 290:4–12]. The absence of such evidence is fatal, as "significant evidence" is required. *Tana*, 611 F.3d at 779. The district court's finding on actual confusion is not supported by the trial record and improperly extends Just Smoothie's actions to Best Smoothie.

54

**V.  THE DISTRICT COURT ERRED IN ISSUING AN OVERLY BROAD INJUNCTION AND BY AWARDING ATTORNEYS' FEES.**

### A. The District Court's Injunction is Overbroad and Unenforceable.

The district court's injunction prohibits Appellants from operating a smoothie business within five miles of any existing or planned Smoothie King location for two years. [Doc. 198 at 9–10, 17]. With over 1,400 Smoothie King locations nationwide, this restriction amounts to a de facto nationwide ban, an impermissible restraint under Georgia and Eleventh Circuit precedent. Georgia's Restrictive Covenants Act specifically allows non-competes only if they are reasonable in time, geographic scope, and activity. Ga. Code Ann. § 13-8-53(a). Covenants that are unreasonable in geographic scope are "unlawful and void." Ga. Code Ann. §§ 13-8-53(d), 13-8-54(b).

In *Baldwin v. Express Oil Change, LLC*, 87 F.4th 1292, 1303–04 (11th Cir. 2023), this Circuit struck down a similar restriction barring a former manager from working within five miles of any of 1,100 Express Oil Change locations nationwide. *Id.* The Circuit held the geographic scope far exceeded the employer's legitimate business interest, which was limited to the employee's former service area of 18 stores. *Id.* at 1304–05. The injunction here suffers from the same flaw. The five-mile blanket exclusion effectively excludes Appellants from competing in the smoothie industry across Georgia and the United States. [Doc. 198 at 18–19]; *see also Carson v. Obor Holding Co., LLC,* 318 Ga. App. 645, 652 (2012) (holding that

non-compete clause restricting activity nationwide was unreasonable). The inclusion of "planned" locations, without a mechanism for Appellants to identify them, further renders the injunction vague and overbroad. [Doc. 198 at 9–10, 17]. *See Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 444 (1974) (those against whom an injunction is issued should receive fair and precisely drawn notice of what the injunction actually prohibits). Such geographic overreach and vagueness violate Georgia law and Eleventh Circuit precedent, constituting an unreasonable restraint on trade and public policy by unduly restricting competition and economic opportunity. *Baldwin,* 87 F.4th at 1305.

### B. The District Court Erred in Finding an "Exceptional Case" Warranting Attorneys' Fees.

The district court erred in awarding attorneys' fees against Appellants based on a cursory and conclusory finding—contained in a single paragraph—that this was an "exceptional case" under 15 U.S.C. § 1117(a). Specifically, the court abused its discretion by resting its finding of exceptionality largely on a single witness's purported "shifting positions and lack of credibility," a rationale unsupported by precedent. [Doc. 198 at 59.] The court cited no legal authority endorsing such a basis for deeming a case "exceptional," because none exists. [Id.]

Under § 1117(a) of the Lanham Act, attorneys' fees may be awarded only in "exceptional cases," defined as those that "stand[] out from others, either with respect to the strength of a party's litigating position or the manner in which the case

56

was litigated." *Tobinick*, 884 F.3d at 1118; *Dieter v. B & H Indus. of Sw. Fla., Inc.*, 880 F.2d 322, 329 (11th Cir. 1989) (noting "[t]he legislative history indicates that a court should only award attorney fees in cases 'characterized as malicious, fraudulent, deliberate and willful.'")

Here, the district court made no findings regarding the strength of Appellants' legal positions. [Doc. 198 at 59]. Nor did the district court find that Appellants engaged in vexatious or abusive litigation conduct. [Id.] While the district court mentioned in passing that Appellants somehow forced Appellee to incur unnecessary attorneys' fees, it failed to in any way explain this statement. [Id.]. There is no suggestion that Appellants withheld evidence or caused delay, or required judicial intervention to resolve discovery disputes—indeed neither party filed any motion to compel. Instead, the record reflects Appellants pursued sound legal positions and engaged in good-faith litigation, which the district court actually acknowledged at trial. [*See* Doc. 197 at 1171:1–9; 1163:23–25; 1105:7–9].

Lastly, the district court made no finding that Appellants acted willfully, maliciously, or fraudulently. [Doc. 198 at  59]; *see Planetary Motion,* 261 F.3d at 1205 (vacating fee award where there was "nothing in the record to support a finding of 'malicious, fraudulent, deliberate, or willful conduct'").

The district court's reliance on disputed credibility determinations and adverse inferences drawn from contested facts falls far short of the demanding standard for exceptional cases. Accordingly, its finding of an exceptional case should be reversed.

## **CONCLUSION**

Appellants asks that this Circuit reverse the district court's Judgment.

Dated:  May 5, 2025                    Respectfully submitted,

/s/ Jonathan D. Goins

Jonathan D. Goins
GA State Bar No. 738593
Jonathan.Goins@lewisbrisbois.com
LEWIS BRISBOIS BISGAARD &
SMITH LLP
600 Peachtree Street NE, Suite 4700
Atlanta, Georgia 30308
404.348.8585

*Attorneys for Best Smoothie, Inc.,*
  *Monjovic LLC, Jean Victome*

58

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7) because this brief contains 12, 999 words, Fed. R. App. P. Rule 32(a)(7)(B)(i).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman font.

Dated:  May 5, 2025                                   Respectfully submitted,

/s/ Jonathan D. Goins
Jonathan D. Goins
GA State Bar No. 738593
Jonathan.Goins@lewisbrisbois.com
LEWIS BRISBOIS BISGAARD &
SMITH LLP
600 Peachtree Street NE, Suite 4700
Atlanta, Georgia 30308
404.348.8585

*Attorneys for Best Smoothie, Inc.,*
*Monjovic LLC, Jean Victome*

**CERTIFICATE OF SERVICE**

I certify that I caused the foregoing document to be filed with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the Appellate CM/ECF system on May 5, 2025. Counsel of record in the case who are registered CM/ECF users, will be served by operation of the CM/ECF system.

Dated:  May 5, 2025

Respectfully submitted,

/s/ Jonathan D. Goins
Jonathan D. Goins
GA State Bar No. 738593
Jonathan.Goins@lewisbrisbois.com
LEWIS BRISBOIS BISGAARD &
SMITH LLP
600 Peachtree Street NE, Suite 4700
Atlanta, Georgia 30308
404.348.8585

*Attorneys for Best Smoothie, Inc.,
    Monjovic LLC, Jean Victome*